UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:21-cr-00008 |
| ) | Judge Aleta A. Trauger |
| THOMAS K. WEIR, *et al.* ) | |

## MEMORANDUM & ORDER

The Government has filed a Motion to Limit Testimony of Proposed Defense Expert Kenneth C. Hohmeier (Doc. No. 179), to which defendant William L. Donaldson has filed a Response (Doc. No. 189), and the Government has filed a Reply (Doc. No. 200). For the reasons set out herein, the motion will be granted in part and denied in part.

## I. BACKGROUND

Donaldson has been charged with three counts related to the provision of controlled substances through a pharmacy where he worked a "patient recruiter." On July 31, 2023, Donaldson filed a Disclosure of Anticipated Expert Witnesses, stating that he intended to call, among others, pharmacist and pharmacy professor Dr. Kenneth Hohmeier to testify as an expert at trial. (Doc. No. 170 at 4.) In the Disclosure, Donaldson describes the subject matter of Dr. Hohmeier's opinions to include the following:

1. Dr. Hohmeier will discuss "red flags" under the Controlled Substances Act and its regulations.

2. Dr. Hohmeier will discuss under what circumstances a pharmacist might refuse to fill a prescription.

3. Dr. Hohmeier will discuss what guidance pharmacists have been given to identify possible abuse of prescription narcotics.

4. Dr. Hohmeier will discuss services and practices of rural and independent pharmacies.

5. Dr. Hohmeier will discuss the history and awareness of the "holy trinity" by pharmacists.

(Id. at 4–5.) "Holy trinity," in this context, refers to a combination of drugs—an opioid, a muscle relaxant, and a benzodiazepine—particularly susceptible to concurrent abuse. *See United States v. Geralt*, 682 F. App'x 394, 399 (6th Cir. 2017).

The Government does not dispute Dr. Hohmeier's general qualifications as an expert or his ability to testify as to the first three of the identified topics. The Government argues, however, that Donaldson has failed to establish that Dr. Hohmeier is qualified to testify with regard to either the practices of rural and independent pharmacies or the general awareness of the "holy trinity" among pharmacists.

The Government also identifies two additional areas touched on by Dr. Hohmeier's written Expert Report that, the Government argues, go beyond his established expertise. First, Hohmeier's Report includes a brief section regarding pharmacists' training related to the federal Anti-Kickback Statute, which is relevant to some of the healthcare fraud-related charges in this case:

> The Anti-Kickback Statute is typically first introduced to pharmacists in pharmacy school as students as part of their federal pharmacy law review. Generally, students are taught that the Anti-Kickback Statute prevents employers, such as pharmacy owners, from paying or incentivizing prescribers to refer patients to a pharmacy. It is common knowledge and generally taken for granted by practicing pharmacists that the Anti-Kickback Statute is directed toward non-employees of the pharmacy, and that pharmacists, pharmacy technicians, and sales personnel who are employees of the pharmacy would not be subject to it. Beyond an introduction in colleges of pharmacy to student pharmacists on the Anti-Kickback Statute, the topic would typically not be revisited as part of a pharmacist's daily practice for most staff pharmacists.

(Doc. No. 170-3 at 5.) Second, the Government argues that Dr. Hohmeier should not be permitted to testify regarding the validity of any of the prescriptions at issue in this case. Although he does

2

not offer such an opinion in his Report, he does briefly touch on the prescriptions in a cursory, but approving, manner. (*See* Doc. No. 170-3 at 2.)

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of an expert witness's testimony at trial. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 453 (6th Cir. 2013) (quoting *Rose v. Truck Ctrs., Inc.*, 388 F. App'x 528, 533 (6th Cir. 2010)). The court's task is to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. The "party proffering expert testimony must show by a preponderance of the evidence that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 592 n.10).

The district court acts as the "gatekeeper" on opinion evidence, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997), and must exercise its gatekeeping function "with heightened care." *U.S.*

3

*v. Cunningham*, 679 F.3d 355, 380 (6th Cir. 2012) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007)). The court will not exclude expert testimony "merely because the factual bases for an expert's opinion are weak." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (citations omitted). Indeed, rejection of expert testimony is the exception rather than the rule—the gatekeeping function established by *Daubert* was never "intended to serve as a replacement for the adversary system." *Rose v. Matrixx Initiatives, Inc.*, No. 07–2404–JPM/tmp, 2009 WL 902311, at *7 (W.D. Tenn. Mar. 31, 2009) (quoting Fed. R. Evid. 702 advisory committee's note).

Rule 702 does not "require anything approaching absolute certainty." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010) (citing *Daubert*, 509 U.S. at 590). Under *Daubert*, experts are "permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as the expert's opinion has a reliable basis in the knowledge and experience of the discipline." *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting *Daubert*, 509 U.S. at 592) (internal quotation marks omitted). However, "the 'knowledge' requirement of Rule 702 requires more than subjective belief or unsupported speculation." *Tamraz*, 620 F.3d at 670 (quoting *Daubert*, 509 U.S. at 590).

### III. ANALYSIS

1. Rural and independent pharmacies. The Government complains that "[n]othing in Hohmeier's extensive CV indicates that Hohmeier has any special training on or experience working in rural pharmacies and none of his peer-reviewed publications appear to address services and practices of rural pharmacies." (Doc. No. 179 at 5.) In his Response, Donaldson lists four grants and two articles that, although they were not expressly focused on the issue of "rural pharmacies," included research related to such pharmacies. (Doc. No. 189 at 5.) Dr. Hohmeier also

4

has extensive experience teaching students at the University of Tennessee Health Science Center College of Pharmacy, which would undoubtedly include preparing some students for work in rural and independent pharmacies. (*See* Doc. No. 170-4 at 3, 5–21.)

The court finds Dr. Hohmeier's expertise in the structure of the pharmaceutical profession to be more than sufficient to permit him to discuss the specific issues facing rural and independent pharmacies. The lack of any particular item on his CV expressly addressing issues related to rural pharmacies does not undermine his substantial broader experience or the fact that aspects of that experience have, in fact, involved such pharmacies. The request to limit his testimony in this regard, therefore, will be denied.

2. Awareness of the "Holy Trinity" Among Pharmacists. It is difficult for the court to see how it would be possible for Dr. Hohmeier to be qualified to testify regarding "red flags" and to "discuss under what circumstances a pharmacist might refuse to fill a prescription"—as the Government concedes that he is—but not qualified to discuss the possibility of suspicions related to the concurrent usage of particular drugs. Indeed, it does not ultimately appear to the court that the Government has any basis for disputing that Dr. Hohmeier is, broadly speaking, capable of addressing this issue. Rather, the Government's objection appears to be based, instead, on the fact that the topic of the "holy trinity" was included in the expert disclosures, but the contents of Dr. Hohmeier's opinions on the subject are not clearly set forth in the Expert Report itself.[1]

Insofar as the lack of detail in Dr. Hohmeier's Report has created some confusion about what his opinion on this topic is, Donaldson has now further explained that "Dr. Hohmeier's testimony will essentially explain the lack of knowledge pharmacists typically possess regarding

---

[1] Dr. Hohmeier does not directly discuss the issue of concurrent use of these three types of drugs in the body of his Report, although the supporting materials he has provided regarding "red flags" do touch on it. (Doc. No. 170-3 at 19.)

5

the 'Holy Trinity.'" (Doc. No. 189 at 6.) Any lack of notice has, therefore, been rectified. Moreover, the fact that Dr. Hohmeier's Report arguably gives short shrift to the issue of concurrent medication use is a topic on which he can be cross examined, if the Government so chooses. Because the issue of concurrent usage is within the scope of matters on which Hohmeier is qualified to offer his expert opinion and is directly relevant to issues covered by his Report, however, the court will not limit his testimony on that topic.

3. Anti-Kickback Statute. The Government argues that Dr. Hohmeier's opinions regarding pharmacists' training related to the Anti-Kickback Statute is "based solely on anecdotal evidence and improper extrapolation," rather than "facts or data." (Doc. No. 179 at 6–7.) Dr. Hohmeier, however, is an experienced educator with a demonstrated familiarity with the training of new pharmacists. Although the Report does discuss the knowledge of practicing pharmacists, it does so in the context of their initial training and education, which Dr. Hohmeier is well-qualified to discuss. The fact that Dr. Hohmeier would offer his expertise on that subject in a narrative form does not render his opinion improperly anecdotal. The court, therefore, will not limit his testimony in that regard.

4. Validity of Prescriptions. Finally, the Government argues that Dr. Hohmeier "should be precluded from offering any opinion testimony regarding the validity of the prescriptions at issue in this case." (Doc. No. 179 at 7.) The Government argues that, because Dr. Hohmeier's Report focuses on general issues, with "only a few vague and indirect references to the prescriptions dispensed in this case," the court should limit him to those general topics at trial. (*Id.*) In particular, the defendants take issue with the following sentence of Hohmeier's report: "In the present case, it appears the patients were known [to] the pharmacist (i.e., regular patients), were not permitted early refills, and that the prescribers were contacted on multiple occasions to ensure prescriptions

6

were valid and clinically appropriate." (Doc. No. 170-3 at 2.) The Government is correct that, absent an explanation of Dr. Hohmeier's methodology for reaching that general conclusion, he cannot provide it consistently with Rule 702.

In Donaldson's Response, he complains that, "[b]ecause of the extensive size of the discovery in this case and the lack of guidance from the government regarding the relevant materials, it would have been impossible for Dr. Hohmeier to provide an opinion on the validity of the prescriptions and patient materials in this case in any reasonable timeframe." (Doc. No. 189 at 7.) He states, however, that, "[i]f and when the government gives Mr. Donaldson more specific information on what patients are specifically relevant to this case, Dr. Hohmeier should be allowed to review these materials and amend his expert report if necessary." (*Id.*) The Government, in its Reply, argues that Donaldson is overstating the degree to which he has been kept in the dark. At the same time, however, the Government confirms that it is the Government's position that it is "not the United States' job to identify for defendant each and every patient and/or prescription it intends to highlight at trial." (Doc. No. 200 at 4.) Donaldson's complaint that he has not yet been afforded an opportunity for Dr. Hohmeier to review key aspects of the Government's actual expected case, therefore, appears well-founded.

The court construes Donaldson's Response as an admission that his current Report does not support the rendering of an opinion regarding the validity of any particular prescription. However, the court finds, based on Dr. Hohmeier's credentials and experience, that he is generally qualified to render opinions regarding the apparent validity of individual prescriptions, if presented with sufficient documentation and called on to do so. The court, therefore, will grant this aspect of the Government's request provisionally, but will also grant Donaldson leave to file a supplemental expert report by Dr. Hohmeier addressing specific prescriptions that presumably will be disclosed

on October 20, 2023 by October 27, 2023.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion to Limit Testimony of Proposed Defense Expert Kenneth C. Hohmeier (Doc. No. 179) is hereby **GRANTED** in part and **DENIED** in part. It is **ORDERED** that Dr. Hohmeier shall not testify as to any opinions regarding the validity of specific prescriptions as part of his testimony in chief, until and unless Donaldson files a supplemental expert report by October 27, 2023. The Government is **ORDERED** to file any objections to that supplemental report, if filed, by November 1, 2023.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge