UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:21-cr-00008 |
| ) | Judge Aleta A. Trauger |
| THOMAS K. WEIR, *et al.* ) | |

## MEMORANDUM & ORDER

The Government has filed a Motion to Exclude Testimony of Proposed Defense Expert Gregory J. Higby (Doc. No. 178), to which defendant William L. Donaldson has filed a Response (Doc. No. 188), and the Government has filed a Reply (Doc. No. 199). For the reasons set out herein, the motion will be granted in part and denied in part.

## I. BACKGROUND

Donaldson has been charged with three counts related to the provision of controlled substances through a pharmacy where he worked a "patient recruiter." On July 31, 2023, Donaldson filed a Disclosure of Anticipated Expert Witnesses, stating that he intended to call, among others, an "expert in the field of pharmacy," Dr. Gregory J. Higby, Ph.D. (Doc. No. 170 at 2.) Dr. Higby is a registered pharmacist in the State of Michigan, but most of his work has been academic and historical in nature. He has served as the Director of the American Institute of the History of Pharmacy, and he is currently a Senior Academic Curator/Senior Lecturer at the University of Wisconsin-Madison School of Pharmacy. According to Donaldson's Disclosure, he intends to elicit testimony from Dr. Higby on the following topics:

1. Dr. Higby will discuss the history of pharmacies and services provided to customers of pharmacies generally.

2. Dr. Higby will discuss historical information concerning certain services provided and activities practiced by community pharmacies in rural settings.

3. Dr. Higby will discuss historical practices and services provided by a pharmacy, including delivering medicines, extending credit to customers, assisting with filling out insurance forms and applications, filling prescriptions early, and synchronizing prescriptions.

4. Dr. Higby will discuss under what circumstances pharmacists might refuse to fill a prescription.

5. Dr. Higby will discuss any training pharmacists have historically received regarding "red flags."

(*Id.* at 2–3.)

Dr. Higby's Expert Report provides greater detail regarding the potential relevance of these historical matters to the present case. Dr. Higby's opinions can, roughly speaking, be separated into three categories. First, Dr. Higby discusses the historical development of pharmaceutical practice with a focus on the precarious position of small, rural, independent pharmacies that, "[u]nable to compete on the basis of price since the 1980s, . . . have emphasized personal services to retain customers." (Doc. No. 170-1 at 2.) Second, Dr. Higby discusses certain practices—such as providing medications early—that, he says, pharmacists have "[h]istorically" engaged in, despite seeming potentially improper. (*Id.* at 5.) Third, Dr. Higby specifically discusses the history of "red flags" and the historical practice of refusing to fill prescriptions. (*Id.* at 6–10.)

On September 7, 2023, the Government filed a Motion to Exclude Testimony, asking the court to prevent Dr. Higby from testifying. (Doc. No. 178.) The Government argues that "Higby's anticipated testimony does not satisfy Federal Rule of Evidence 702" and that, if the court finds that the testimony is not excludable on that basis, "it should be excluded under Federal Rule of Evidence 403 because it will confuse the issues and mislead the jury." (*Id.* at 1.)

## II. LEGAL STANDARD

**A. Rule 702**

Federal Rule of Evidence 702 governs the admissibility of an expert witness's testimony at trial. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 453 (6th Cir. 2013) (quoting *Rose v. Truck Ctrs., Inc.*, 388 F. App'x 528, 533 (6th Cir. 2010)). The court's task is to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. The "party proffering expert testimony must show by a preponderance of the evidence that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 592 n.10).

The district court acts as the "gatekeeper" on opinion evidence, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997), and must exercise its gatekeeping function "with heightened care." *U.S. v. Cunningham*, 679 F.3d 355, 380 (6th Cir. 2012) (quoting *Surles ex rel. Johnson v. Greyhound*

3

*Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007)). The court will not exclude expert testimony "merely because the factual bases for an expert's opinion are weak." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) (citations omitted). Indeed, rejection of expert testimony is the exception rather than the rule—the gatekeeping function established by *Daubert* was never "intended to serve as a replacement for the adversary system." *Rose v. Matrixx Initiatives, Inc.*, No. 07–2404–JPM/tmp, 2009 WL 902311, at *7 (W.D. Tenn. Mar. 31, 2009) (quoting Fed. R. Evid. 702 advisory committee's note).

Rule 702 does not "require anything approaching absolute certainty." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010) (citing *Daubert*, 509 U.S. at 590). Under *Daubert*, experts are "permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as the expert's opinion has a reliable basis in the knowledge and experience of the discipline." *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting *Daubert*, 509 U.S. at 592) (internal quotation marks omitted). However, "the 'knowledge' requirement of Rule 702 requires more than subjective belief or unsupported speculation." *Tamraz*, 620 F.3d at 670 (quoting *Daubert*, 509 U.S. at 590).

## B. Rule 403

Under Rule 403 of the Federal Rules of Evidence, the court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "'Unfair prejudice' within [the context of Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403 advisory committee's note) (internal quotation marks omitted).

4

## III. ANALYSIS

The Government does not dispute that Dr. Higby's professional experience generally qualifies him to testify regarding the "history of pharmacy," insofar as that topic is relevant to a case and the specific testimony provided meets all other requirements for admissibility. The Government argues, however, that Dr. Higby's anticipated testimony in this case should be excluded because all such testimony runs afoul of one or another of two problems. First, as to the purely historical matters on which Dr. Higby has genuine expertise, the Government argues that his testimony would be irrelevant and confusing. Second, the Government argues that any testimony that would actually be relevant—that is, testimony bearing directly on current norms and practices—is beyond Dr. Higby's expertise as a historian.

The Government's argument would be persuasive if this case were only about whether or not prescriptions should have been filled. This, however, is a criminal case involving allegations of dealing in controlled substances and fraud. The defendants' state of mind—including, in particular, whether they might have mistakenly believed that their actions were authorized—is at issue. *See Ruan v. United States*, 142 S. Ct. 2370, 2376 (2022). Donaldson has been in and around the pharmacy world for many years. He is permitted to put on evidence that would tend to support a defense based on the possibility that, even if he did make mistakes, he was merely laboring under an outdated understanding, as opposed to knowingly acting in an unauthorized manner.

In the Government's Reply, it argues that evidence regarding historical attitudes and practices in independent pharmacies could not be relevant to Donaldson's state of mind, because Donaldson himself originally worked in a chain pharmacy and only moved into the independent pharmacy field in 2002. That fact, however, goes only to the weight of the evidence. It does not outweigh its potential probative value.

5

Dr. Higby's anticipated testimony about the historical role of small pharmacies, moreover, is both well within his expertise and relevant to the case. One of the issues that the jury will likely have to consider is whether the defendants' actions toward patients revealed an eagerness for those patients' business that was more indicative of a money-making scheme than a pharmaceutical practice. The fact that the pharmaceutical field has, over time, developed in such a manner as to encourage an emphasis on customer service for certain pharmacies is highly relevant to that question.[1] The central importance of culpable mental state in this case, moreover, means that the probative value of such an inquiry outweighs any potential for confusion.

The court also finds no merit in the argument that there is anything methodologically unsound or unreliable about Dr. Higby's analysis. To the contrary, Dr. Higby's Report cites numerous relevant sources, and the Government has not identified any way in which he has departed from the usual, accepted practices of historians.

One aspect of the Government's objections, however, is convincing. Dr. Higby's Expert Report mostly limits itself to his area of expertise—that is, history. Donaldson's Disclosure, however, suggests that he may testify regarding "under what circumstances pharmacists might refuse to fill a prescription," a phrase to which Donaldson does not append the modifier "historical" or "historically," as he has done with the other areas of Dr. Higby's anticipated testimony. Dr. Higby is a pharmacist, but his CV—including his voluminous list of publications, lectures, and symposia—makes clear that he is primarily a historian of the field, not an arbiter of contemporary standards. The court, accordingly, will limit his testimony to historical matters. He will not be

---

[1] The court notes that there is a way of thinking about these facts that favors the Government's case as much as the defendants'. The precarious state of small, rural pharmacies and the resultant need to court and maintain a customer base might explain certain obsequious behavior that otherwise would be suspicious. That same desperation for customer loyalty, however, is also a reason why a pharmacist might choose to look the other way with regard to invalid prescriptions. The extent to which this version of history actually disfavors the Government is, therefore, debatable.

6

Case 2:21-cr-00008   Document 205   Filed 10/04/23   Page 6 of 7 PageID #: 739

permitted to testify regarding current standards of practice, nor will the court grant leave to amend his Report to reflect a review of individual prescriptions under contemporary standards, as the court has done with Donaldson's other expert, Dr. Hohmeier.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion to Exclude Testimony of Proposed Defense Expert Gregory J. Higby (Doc. No. 178) is hereby **GRANTED** in part and **DENIED** in part. It is **ORDERED** that Dr. Higby shall not testify as to contemporary standards of pharmacy practice.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge