# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **Case No. 2:21-cr-00008** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| [1] THOMAS K. WEIR | ) | |
| [3] WILLIAM L. DONALDSON | ) | |
| [4] PAMELA SPIVEY | ) | |

## MEMORANDUM and ORDER

Defendants Thomas Weir, William Donaldson, and Pamela Spivey have filed a Motion to Dismiss Indictment or, In the Alternative, for Discovery, arguing that it was "arbitrary, random, and unreasonable for the government to select" for prosecution the pharmacies they operated, Dale Hollow Pharmacy and Xpress Pharmacy, "from a pool that included pharmacies much more responsible for the opioid crisis" than their operations were. (Doc. No. 275, at 3.) They expressly do not contend that the decision to prosecute them was "motivated by a discriminatory purpose." (*Id.* at 4.) Rather, they argue that the decision to prosecute them lacked a rational basis, because the government should instead have gone after bigger fish—namely Walgreens executives and the Sackler family. (*See id.* at 7 ("Given the choice not to prosecute actors like Walgreens and the Sacklers, it is unreasonable for the government to prosecute Weir, Donaldson and Spivey for their alleged roles in the alleged Dale Hollow Pharmacy and Xpress Pharmacy conspiracy.").) In the alternative, they seek discovery to bolster their claim of selective prosecution. Specifically, they ask the court to order the government to disclose:

> (1) its prosecution memorandum for this case; (2) all records showing all communications between the Department of Justice, DEA, or any other federal

agency regarding Dale Hollow Pharmacy and Xpress Pharmacy; and, (3) any documents stating or reflecting the DOJ's policy towards charging pharmacies and their actors with criminal charges relating to opioids under 21 U.S.C. § 846, 18 U.S.C. § 371, 18 U.S.C. § 1349, and/or 42 U.S.C. § 1320a-7b(b).

(*Id.* at 8–9.)

The United States opposes the motion, arguing that (1) the defendants fail to make out a *prima facie* case of selective prosecution and rely on an incorrect standard; and (2) the defendants have not made a showing of the essential elements of selective prosecution that would entitle them to seek discovery. (Doc. No. 306.)

## I.    LEGAL STANDARD

"Under Article II [of the Constitution], the Executive Branch possesses authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'" *United States v. Texas*, 599 U.S. 670, 678 (2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021)). And a "selective-prosecution claim asks a court to exercise judicial power over a special province of the Executive." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citation and internal quotation marks omitted). Because federal law enforcement "retain[s] broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *Id.* (citation and internal quotation marks omitted). Accordingly, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in his discretion." *Id.* (citation and quotation marks omitted).

The Constitution does impose outer limits on such prosecutorial discretion. "One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on an unjustifiable

standard such as race, religion, or other arbitrary classification." *Id.* (citations and internal quotation marks omitted). A defendant alleging that sort of selective prosecution must "demonstrate that the administration of a criminal law is directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the law." *Id.* at 464–65. And he must do so by proffering "clear evidence" that the prosecutor's policy had both a discriminatory *purpose* and a discriminatory *effect. Id.* at 465. As for the "purpose" requirement, a defendant "must prove that the decisionmakers in his case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). To satisfy the "effect" element, a defendant "must show that similarly situated individuals of a different race [or other protected classification] were not prosecuted." *Armstrong*, 517 U.S. at 465.

Although *Armstrong* is nearly thirty years old, and the cases on which it relies even older, the Supreme Court and Sixth Circuit have continued to cite and apply the standard articulated in *Armstrong. See, e.g.*, *Texas*, 599 U.S. at 679 (quoting *Armstrong*); *Davison v. United States*, No. 21-4170, 2022 WL 17572211, at *3 (6th Cir. June 7, 2022) (same); *United States v. Merriweather*, 728 F. App'x 498, 507 (6th Cir. 2018) (same); *Loza v. Mitchell*, 766 F.3d 466, 495 (6th Cir. 2014) (same).

The defendants here argue that the *Armstrong* standard has been replaced by a "rational basis" standard. They are incorrect, except insofar as analysis of a selective prosecution defense is governed by equal protection principles, *see Armstrong*, 517 U.S. at 464; *see also Wayte v. United States*, 470 U.S. 598, 608 (1985) ("It is appropriate to judge selective prosecution claims according to ordinary equal protection standards."), and equal protection claims that are *not* grounded in a suspect classification—such as race, gender, or religion—are subject to rational basis review.

*Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (citations omitted). To show that a government action lacks rational basis, however, the defendants would need to "negative[e] every conceivable basis which might support the government action, or . . . demonstrat[e] that the challenged government action was motivated by animus or ill-will." *Id.* (internal quotation marks and citation omitted).

## II.      DISCUSSION

As stated above, the defendants do not claim that their prosecution was motivated by a "discriminatory purpose," nor do they contend that it was motivated by animus or ill-will. Their rational basis claim is premised entirely on the fact that the government chose to prosecute them rather than bigger actors in the illegal-opioid-distribution field. The defendants characterize this decision as arbitrary and random. Notably, however, they do not contend that the government lacks probable cause to pursue this prosecution. But, under *Armstrong*, a particular prosecution is presumed to be within the bounds of prosecutorial discretion, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute" and provided it is not based on "an unjustifiable standard." *Armstrong*, 517 U.S. at 464.

In other words, if a particular prosecution is supported by probable cause, there is a rational basis for that prosecution, and the defendants *ipso facto* cannot "negative[e] every conceivable basis which might support the government action." *Davis*, 679 F.3d at 438. Aside from their failure to show that the Sacklers or Walgreens executives are similarly situated to them, the defendants' assertion that the government's decision to prosecute them is "random" and "arbitrary"—simply because the government did not also prosecute Walgreens and the Sackler family—borders on the specious.

Moreover, to be entitled to obtain discovery related to a claim of selective prosecution, a defendant must make a showing of "*some evidence* tending to show the existence of the essential

elements of the defense, discriminatory effect and discriminatory intent." *United States v. Thorpe*, 471 F.3d 652, 657 (6th Cir. 2006) (quoting *Armstrong*, 517 U.S. at 468) (emphasis in original); *see also United States v. Ramic*, Case No. 1:21-CR-00013, 2023 WL 8482899 at *6 (W.D. Ky. Dec. 5, 2023) (denying discovery where the defendant failed to meet his initial burden of showing existence of similarly situated individuals or discriminatory intent). The "some evidence standard" is rigorous, *Armstrong*, 517 U.S. at 468, and the defendants utterly fail to meet it here.

## III. CONCLUSION AND ORDER

For the reasons set forth herein, the defendants' motion to dismiss and alternative request for discovery (Doc. No. 275) are both **DENIED**.

It is so **ORDERED**.

_____

ALETA A. TRAUGER
United States District Judge