UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:21-cr-00008 |
| ) | Judge Aleta A. Trauger |
| THOMAS K. WEIR, *et al.* ) | |

## MEMORANDUM & ORDER

Defendants Thomas Weir, William Donaldson and Pamela Spivey have filed a Joint Motion in Limine No. 15: Exclude Summary Charts and Related Testimony ("MIL No. 15") (Doc. No. 282) and a Joint Motion in Limine No. 16: Exclude Expert Declarations and Reports and Unduly Prejudicial Expert Testimony ("MIL No. 16") (Doc. No. 283), to which the Government has filed a combined Response (Doc. No. 319). For the reasons set out herein, MIL No. 15 will be denied, and MIL No. 16 will be granted in part and denied in part.

## MOTION IN LIMINE NO. 15

In MIL No. 15, the defendants ask the court to exclude "over 200 'summary charts,' enumerated on [the Government's] proposed exhibit list as Exhibits 500-501, 503, 505-508, 511-512, 515-535, 537-552, 554-575,577-612, 625-630 and 725-733." (Doc. No. 282 at 1.) Rule 1006 of the Federal Rules of Evidence permits the use of such charts and summaries "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," as long as the party relying on the summary "make[s] the originals or duplicates available for examination or copying . . . at a reasonable time and place." F.R.E. 1006. The defendants' arguments, however, are not about the Government's compliance with the technical requirements set out in Rule 1006, but rather the broader question of whether the relevance, if any, of the information depicted outweighs the capacity for undue prejudice. *See United States v. Moon*, 513

F.3d 527, 545 (6th Cir. 2008) (stating that Rule 1006 summaries must be accurate, nonprejudicial, and based on admissible evidence).

Although this objection touches on dozens of proposed exhibits, the issues presented can mostly be boiled down to a few questions. First, is it permissible to depict the volume of the defendants' practice-wide dispensing activities, even though those depictions would involve numerous prescriptions that the Government will not argue were individually improper? Second, is it permissible to present data comparing the defendants' pharmacies to other pharmacies or to patterns of dispensing of the relevant drugs regionally? Third, is it permissible to present data regarding the pharmacies' cashflow, even though some of that cashflow is attributable to actions other than those at issue in this case? And, finally, if none of the aforementioned issues is independently sufficient to bar the admission of the cited materials, should those materials nevertheless be excluded because the visual form in which they would be presented would give the underlying facts undue weight?

The U.S. District Court for the Eastern District of Michigan undertook a survey of the caselaw regarding statistical evidence of volume and peer comparisons related to the dispensing of controlled substances in *United States v. Iwas*, No. 18-20769, 2023 WL 6702114 (E.D. Mich. Oct. 12, 2023), and that court concluded that admitting such evidence was within both the general bounds of the Rules of Evidence and established Sixth Circuit caselaw. *Id.* at *7. This court agrees. Indeed, the Sixth Circuit has recognized the probative value of statistical evidence of both the absolute and relative volume of controlled substance prescriptions in criminal cases for decades. *See, e.g.*, *United States v. Sadler*, 750 F.3d 585, 589 (6th Cir. 2014); *United States v. Kirk*, 584 F.2d 773, 778 (6th Cir. 1978). Evidence that a pharmacy was filling an unusual volume of controlled substance prescriptions is probative of, among other things, the knowledge and intent

of the individuals operating that pharmacy, as well as whether that pharmacy was being operated consistently with accepted professional practices. The fact that the relevant data includes information regarding patients whose prescriptions will not be otherwise specifically discussed in the Government's case does not render the data irrelevant, because cumulative data about a business, placed in context, is evidence of the underlying business's general practices and policies, and those general practices and policies are, in turn, directly relevant to what occurred (or would, by alleged conspirators, be expected to occur) in any more specific instance.

The defendants point out that not all pharmacies are the same and that there may be innocent explanations for dispensing an unusually large volume of a particular drug. That is undoubtedly true, and the defendants may pursue that counterargument through cross-examination and/or their own evidence. The fact that a particular piece of evidence is not ironclad proof of something, however, does not negate its probative value altogether. The potentially probative value of this evidence is still high, and, while there may be some limited risk of prejudice, the court does not find that risk of prejudice undue or unfair.

The defendants' argument to the contrary relies, in significant part, on *United States v. Seelig*, 622 F.2d 207 (6th Cir. 1980), in which the Sixth Circuit held that the admission of a "sales comparison chart" in a Controlled Substances Act case against three pharmacists was error. *Id.* at 215. The Sixth Circuit was clear, in that case, however, that it was not announcing a categorical rule against the admission of "comparisons of distributions of controlled substances," which the court had already held to be admissible, in at least some situations. *Id.* (discussing *Kirk*, 584 F.2d at 778). Rather, there were specific flaws in *Seelig* that are not present here. For one thing, "[t]he underlying records on which [the chart was] based were not . . . made available to" the defendants. *Id.* The comparisons also were not presented by an expert capable of explaining their significance,

3

but rather simply by a police officer. *Id.* The comparisons, moreover, involved just a few stores that were "picked" by that non-expert police officer "apparently at random," with little effort to show that they were meaningful comparators. *Id.* The fact that the plainly deficient chart in *Seelig* did not pass muster does little to support excluding the significantly better-supported comparisons in this case, which, if anything, find support from the Sixth Circuit's acknowledgment, in *Seelig*, that, despite the flaws at issue in that particular case, "evidence of high volume may be used to show intent and wilfulness." *Id.* at 216.

As for the evidence of the pharmacies' income, it is well-established that evidence of economic circumstances is probative of motive. *See, e.g.*, *United States v. Logan*, 250 F.3d 350, 369 (6th Cir. 2001).

Nothing about the aforementioned analyses is meaningfully changed by the fact that the Government would be presenting the relevant data in an eye-catching visual form. The defendants complain that the jury could be unduly distracted by having a "colorful chart in their hands" or by the dramatic effect of a "a jagged line graph" (Doc. No. 282 at 11–12), but the risk that one party will present information in a particularly striking way is present in all litigation. It may be the case that the attention-grabbing nature of a chart or graph could justify excluding it, if its admissibility were already a borderline question. The data at issue here, however, has significant probative value that outweighs any risk of prejudice, and the fact that the Government is allegedly presenting that data in a particularly effective way does not render it inadmissible.[1]

---

[1] In addition to the aforementioned substantive arguments, the defendants suggest that some of the charts are improperly cumulative. As the defendants acknowledge, however, the general issue of cumulative evidence is addressed in Motion in Limine No. 2. The court, therefore, will not discuss that issue here.

4

# MOTION IN LIMINE NO. 16

In MIL No. 16, the defendants ask the court to "prohibit the government from introducing into evidence its proposed Exhibits 216-220, which are expert reports prepared by Carl Gainor and Johanna Sullivan" and, further, to prevent those witnesses from "testifying regarding certain inadmissible information contained in the reports." (Doc. No. 283 at 1.) The defendants did not file any timely challenge to the general admissibility of those experts' opinions under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993), and have, therefore, arguably forfeited any general argument that the experts are unqualified or that the methods through which their opinions were derived were improper under *Daubert*. The defendants, however, have raised more specific objections to the contents of the relevant experts' opinions that, they argue, should render them inadmissible for other reasons. The Government objects that these arguments should have been raised prior to the deadline for *Daubert* motions, but, because the defendants' arguments involve issues beyond simply the general test for permissible expert testimony under *Daubert*, the court will not treat those arguments as untimely raised.

<u>1. Admissibility of Expert Reports/Declarations</u>

The defendants' first objection is not to the experts' opinions themselves, but to the possibility that the Government would offer the experts' written reports or declarations into evidence. In the Government's Response, it states that the "[e]xpert reports and declarations were included on the Government's Exhibit List but marked for identification purposes only," and "[t]he Government does not plan to seek their admission at trial." (Doc. No. 319 at 1 n.1.) This portion of the defendants' request, therefore, will be granted as unopposed.

5

## 2. Testimony Regarding Legal Conclusions

The defendants object next that Dr. Gainor has improperly expressed a legal conclusion in his Declaration and that Dr. Gainor or Dr. Sullivan may do similarly at trial. Specifically, the defendants object to the following language: "It is my professional opinion that Dale Hollow pharmacists John Polston, Larry Larkin and William Lee Cole filled these prescriptions in violation of their corresponding[2] duty and outside of [the] usual course of the professional practice of pharmacy when discussing Dale Hollow patients." (Doc. No. 283 at 4–5.) The Government responds that medical experts are permitted to opine on the propriety of conduct under prevailing professional standards, which presents a fundamentally factual question uniquely within those witnesses' expertise.

There are two distinct issues presented by this objection. First is the question of whether the Government's experts can testify regarding whether actions were outside of the usual course of the professional practice of pharmacy. The Government is correct that that is a factual question on which an expert may opine. The defendants' arguments to the contrary rely on an outmoded focus on whether the expert's testimony happens to veer too closely to a factual question presented to the jury. Under current law, however, while "[a]n expert may not opine on the overarching question of guilt or innocence, . . . he or she may 'stat[e] opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue.'" *United States v. Volkman*, 797 F.3d 377, 388 (6th Cir. 2015) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)). An expert's opinion regarding whether an action was within the usual course of professional practice is permissible within those bounds, as long as it is presented in a manner that makes clear to the jury that what is being offered is an

---

[2] The significance of this term will be discussed later herein.

opinion based on expertise, not a legal conclusion. *See United States v. Anderson*, 67 F.4th 755, 767 (6th Cir. 2023) (agreeing with district court that "courts frequently admit expert testimony on the question of whether medications were prescribed with a legitimate medical purpose").

The second issue posed by the defendants' objection, however, is more difficult. An examination of Dr. Gainor's Declaration suggests that the "corresponding duty" to which he refers is derived from the concept of "corresponding responsibility" set out in 21 C.F.R. § 1306.04(a), which states:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. *The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription.* An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

*Id.* (emphasis added). As the Sixth Circuit has recognized, one of the hallmarks of an improper legal opinion in testimony is that the testimony includes "terms [with a] distinct and specialized meaning in the law." *Id.* at 388 (quoting *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)). Specific discussion of a "corresponding" duty or responsibility does, as the defendants suggest, come close to opining regarding the contours of a legal duty.

At the same time, however, the defendants have not identified any reason to doubt that the basic concept of a pharmacist's "corresponding duty" is, in fact, a component of the relevant governing law and the practice of pharmacy. While it is not the place of an expert to opine regarding the existence or meaning of a legal duty, it would be within the ordinary scope of expert testimony to express an opinion regarding whether a defendant's acts, if any, performed *in*

7

*connection with* that duty were consistent with accepted pharmaceutical practice. Moreover, the fact that a "corresponding responsibility" exists as a creature of law does not necessarily negate the fact that certain prescription screening practices might also exist as professional norms, not merely regulatory requirements. An expert in the practice of pharmacy cannot testify that a pharmacist has a *legal obligation* to engage in the screening of prescriptions. An expert can, however, testify as to ordinary practices accepted throughout the profession in connection with dispensing prescriptions for controlled substances.

Accordingly, the court will grant the defendants' request, in part, and will bar the Government's experts from offering any opinion that a defendant violated the "corresponding responsibility" requirement of 21 C.F.R. § 1306.04. The experts may, however, testify to professional norms regarding the evaluation of prescriptions by pharmacies, and the experts will not be barred from acknowledging that a "corresponding responsibility" to scrutinize prescriptions for controlled substances is widely acknowledged among members of the pharmaceutical profession, if that is, in fact, the expert's opinion.

### 3. Testimony Regarding Cause of Death

The parties acknowledge that this issue is largely an extension of the broader question of whether the Government may refer to deceased patients more generally, as covered by the defendants' Motion in Limine No. 10 (Doc. No. 271). The court, accordingly, will address that issue separately.

### CONCLUSION

For the foregoing reasons, the defendants' Joint Motion in Limine No. 15: Exclude Summary Charts and Related Testimony (Doc. No. 282) is hereby **DENIED**, and their Joint Motion in Limine No. 16: Exclude Expert Declarations and Reports and Unduly Prejudicial Expert

Testimony (Doc. No. 283) is hereby **GRANTED** in part and **DENIED** in part. It is hereby **ORDERED** that (1) the Government's expert reports and declarations shall not be admitted into evidence and (2) the Government's experts shall not offer any opinion regarding the defendants' legal compliance with 21 C.F.R. § 1306.04(a). The experts may, however, testify as to whether defendants complied with prevailing professional standards related to the duty discussed in that subsection.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge