# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:21-cr-00008 |
| ) | Judge Aleta A. Trauger |
| THOMAS K. WEIR, *et al.* ) | |

## MEMORANDUM & ORDER

Defendants Thomas Weir, William Donaldson, and Pamela Spivey have filed a Joint Motion in Limine Number 10 to Exclude References to Deceased Patients (Doc. No. 271), to which the Government has filed a Response (Doc. No. 300). The defendants ask the court to bar the Government from "introduc[ing] evidence that any pharmacy patients are deceased, mak[ing] any mention to the jury that these patients are deceased, or attempt[ing] to make any implication that the death of these patients had any link with prescriptions filled at the pharmacies." (Doc. No. 271 at 2.)

The Government states that it "anticipates that witnesses will offer testimony that the defendants and their co-conspirators were aware that patients of the pharmacies were suffering overdoses and dying while under their care, and about the reactions of co-conspirators to the information that patients had died, and their decisions to continue to fill prescriptions and not change their practices." (Doc. No. 300 at 2.) Although evidence that any one patient—or even many patients—overdosed is not, in and of itself, evidence of wrongdoing by a pharmacist, evidence of the defendants' awareness of those overdoses and/or overdose deaths would still be highly relevant to the defendants' knowledge that the pharmacies were not dispensing drugs in a manner consistent with the professional practice of pharmacy. Of course, there would have to be competent proof that the overdose or death by overdose was linked to the drugs dispensed by the

defendants and that the defendants knew of that link. If such evidence is presented, however, a jury could reasonably infer that a defendant's knowledge of an overdose directly attributable to drugs dispensed by the relevant pharmacy is relevant to that defendant's broader knowledge of whether the pharmacy was dispensing drugs appropriately. That does not mean that, simply because someone overdosed on a drug, something was necessarily done improperly by the pharmacy that dispensed it. Known overdoses, however, would be a meaningful part of the broader body of information relevant to a defendant's understanding of whether a pharmacy was appropriately screening prescriptions, and a jury could reasonably rely on that evidence as part of its broader evaluation of the defendant's knowledge and intent. Although the defendants' concerns regarding prejudice are understandable, that risk does not outweigh the probative value of such evidence, if properly supported.[1]

If the Government had agreed, in its Response, that it only intended to present evidence of patient overdose deaths of which the defendants were actually or likely aware, then that would probably be enough to end the inquiry. However, the Government's briefing appears to leave open the possibility that it will argue that "evidence of uncharged patient deaths"—not simply uncharged patient deaths *of which the defendants were aware*—"is highly probative of whether a defendant distributed controlled substances outside the usual course of professional practice and in an unauthorized manner." (*Id.* at 6.) It also appears that the Government may be intending to present evidence of patient overdoses as *post hoc* evidence that the underlying dispensing of drugs to those patients was improper. (*See* Doc. No. 30 at 2–3.)

Insofar as the Government does intend to present evidence of patient overdose deaths of which the defendants were unaware during the relevant time period, the Government has failed to

---

[1] The defendants also may, of course, request a jury instruction informing the jury of the limited purpose of such evidence.

establish that the probative value of that evidence would outweigh its significant capacity for unfair prejudice. If the Government had sought to present valid statistical evidence that the defendants' patients overdosed at an unusually high rate, that might be admissible. Bare evidence that some patients overdosed and/or died, however, is very little evidence of anything, other than that the drugs involved are dangerous, regardless of who dispenses them. Similarly, the fact that a patient overdosed is not meaningful evidence that the decision to fill that patient's prescription was improper. The decision to fill a prescription must be judged by the information available to the pharmacist *at the time of the dispensing*. An appropriate decision to dispense a prescribed drug, based on the available information and after an appropriate review, is not rendered inappropriate by a patient's later overdose—just as a wrongful dispensing is not redeemed by the fact that the patient who received the drug *did not* overdose.

The court is aware that its ruling appears to restrict this type of evidence more strictly than some courts have. *See, e.g.*, *United States v. Hofstetter*, No. 3:15-CR-27-TAV-DCP, 2019 WL 6718489, at *7 (E.D. Tenn. Dec. 9, 2019). However, the court sees no way around the conclusion that allowing the Government to freely introduce evidence of deaths, regardless of the defendants' actual or likely knowledge of those deaths, would do far more harm than good. The argument to the contrary appears to be that, if a patient overdosed, then that patient was significantly less likely to have been a "legitimate pain patient[]," *id.* at *1, and the decision to dispense the drug to that patient was, therefore, likely outside the accepted practice of pharmacy. That reasoning, however, relies on some significant leaps. For one thing, it is simply not true that no one who overdoses is a "legitimate pain patient." More importantly, it is not illegal to fill a valid, supported prescription that has been subject to appropriate review, merely because the patient is, unbeknownst to the pharmacist, seeking to use the drug improperly. The relevance of patient overdose deaths in and

3

of themselves, without either evidence of knowledge or statistical context, is low—too low to overcome the prejudice that would result.

For the foregoing reasons, the defendants' Motion in Limine Number 10 to Exclude References to Deceased Patients (Doc. No. 271) is hereby **GRANTED** in part and **DENIED** in part. It is hereby **ORDERED** that the Government shall not present evidence of, or make reference to, any patient overdose deaths or overdoses, unless accompanied by evidence supporting a conclusion or inference that a defendant was actually or likely aware of the relevant overdose or overdose death and its connection to the relevant pharmacy during the appropriate time period.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge